PENSACOLA AND ATLANTIC R. R. CO., APPELLANT, VS. LEWIS JACKSON, APPELLEE.

1. Where with the full knowledge and in the presence of the owner of land a chartered railroad company wrongfully or without lawful right enters upon and takes possession, destroying the fences and superstructures thereon, and builds a line of railroad and runs its cars over it, the owner making no objection other than that the amount of damages offered by the company is not satisfactory, and the owner of the land lies by for over nine months without attempting to prevent the taking possession and occupation by the company, a court of equity will not enjoin the company from continuing to run its cars over the road. The conduct of the owner amounts to an acquiescence in the construction of the road over his land, and the public have acquired rights upon such acquiescence which will not be interfered with by a court of equity by injunction.

2. Yet the owner has not lost his title to the land and may maintain an appropriate action at law to recover his damages.

3. Such injury being of a permanent nature, the damages recoverable at law may include the whole injury or loss, and there can be no danger of further litigation to recover such damages ; therefore, there is no ground of equity jurisdiction to prevent or avoid multiplicity of suits : a judgment for the whole injury would be a bar to action for subsequent injuries arising from the same source.

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*W. A. Blount* for Appellant.

The demurrer should have been sustained.

1. The complainant had a complete, perfect and adequate remedy at law. In Moody vs. J. T. & K. W. R. R. Co., 20 Fla., this court decides that a railroad company incorporated under the general law of incorporation of railroads

and canals, has no right to condemn lands.    The charter of defendant is more defective in this particular than the general law.    The defendant, then, having no pretense of right was a mere trespasser, and the complainant has a complete remedy at law by ejectment for possession and mesne profits and trespass for damages.    It is the ordinary case of an ouster accompanied with a trespass, and a continuing possession by the trespasser.    12 Fla., 26 ; 13 Fla., 381.

In such case the injury is all past and an injunction will not lie unless irremediable future injury is alleged.

Ejectment for the land and  mesne profits for its use, and trespass for the damage would afford full relief, or if the damages rendered the land worthless, then trespass alone would afford  full relief.    68 Ill., 121 ; 49 Mo., 436 ; 5 W. Va., 234; 70 N. Y., 538 ; 6 C. E. Greene, 259 ; Attorney-General vs. N. J. & C., 2 Greene, 136.

This bill is for an injunction and an account without any view of ulterior relief as to the land.    The injunction is primary and the account secondary, for it will not be contended that equity will admit a bill merely for an account of damages done to land by a trespass.    An injunction is never granted except as ancillary to some primary equity unless there is apprehension of *future* irreparable injury, and in this bill there is no such allegation.    Stockton vs. Briggs, 5 Jones' Eq., 309 ; 3 C. E. Greene, 293 ; Ibid, 342 ; Ibid, 395.

But at any rate the complainant has, as shown by the bill, stood by for more than a year and allowed the defendant to proceed to  build its road and cannot now ask that it be enjoined from the use of it.    Here there was no objection to the defendant's taking possession but merely a difference as to amount of compensation, and the bill affirms the acquiescence by asking for an account of the compensation.    The fact that he acquiesced under a mistake *of law*,

in believing that defendant had a right to condemn the land, does not avail him.   Dure vs. Guest, 1 My. & Cr., 522; Hentz vs. L. I. R. R. Co., 13 Bart., 646 ; 3 Ibid, 784 ; 6 C. E. Greene, 283 ; 18 Ohio St., 169.

I am aware that there are authorities to the contrary of these positions but they are directly adverse to the general rules of equity as shown by the citations above, and appear to be the result of the disposition of some courts, as well as of juries, to administer one law to individuals and another to corporations, a disposition which will not affect this court.

*John C. Avery* for Appellee.

In view of the recent decision of this court in Moody vs. The J. T. & K. W. R. R. Co. there can be no doubt but that the appellant's action was illegal.

The only question is, was that action such as to make a case for equitable interposition.

The jurisdiction was upheld by this court in the case just cited, the circumstances of which were much like those of this case.

The jurisdiction has also been upheld in many other cases by other courts where the facts were the same or similar to those in this case.   High on Injunctions, §§392–3, and authorities there cited ; Pierce on Railroads, p. 168, and authorities there cited.

In some cases it has been held that after long acquiescence by the injured party, he cannot have the aid of an injunction.   But the bill here shows no acquiescence by appellee, but, on the contrary, a determination to resist.

It is true he appeared before the jury summoned to assess his damages, but that was at a time when the general opinion was that such proceeding was legal.

It is in the power of the court to allow as the alternative

of a perpetual injunction, the payment of damages to the land owner for his entire injury. Pierce on Railroads, pp-230–1; Henderson vs. R. R. Co., 78 N. Y., 423.

And appellee would be satisfied with such relief.

THE CHIEF JUSTICE delivered the opinion of the court:

Bill for injunction and relief filed January 25, 1883.

On and before the tenth day of April, 1882, Jackson was the owner of a town lot in the town of Milton, Santa Rosa county, on which was a house, fruit trees and fences, and on that and on subsequent days the railroad company, claiming to be authorized by its charter, entered upon the premises, and ousted complainant's tenant without notice and appropriated the middle portion of the lot as a road bed of its railroad, tore away the fences, dug up the trees and removed the dwelling-house, and has constructed a railroad across the lot, and trains are daily running over the same, yet prior to such occupation no agreement had been made or sought to be made as to the value of the property so taken, or the damages sustained by such taking, and appropriation by the company, though complainant was present, in or in the vicinity of the town of Milton, at the time. After this destruction and appropriation of his property the complainant was notified by the Sheriff that a jury had been summoned by virtue of the charter of the company, (ch. 3335, act of 1881, sec. 9,) to fix his damages. Complainant appeared before the jury and asked to be permitted to make a statement in regard to condition and value of his property, but the jury refused to listen to him and proceeded to assess his damages at twenty-five dollars, whereas the rental value was five dollars per month. The company afterward tendered to him the twenty-five dollars which he declined. Complainant insists that the taking of his prop-

erty without his consent, and without making adequate compensation, is in violation of the Constitution. He asks that an inquiry be made by a master to ascertain his damages, and that the defendant be enjoined from the use of his property by running trains over it, or otherwise, until the payment of the sum to be found by the master for his damages, and for other adequate relief. Defendant demurred to the bill for want of equity. The demurrer was overruled and defendant appealed. The ninth section of the act incorporating the Pensacola and Atlantic R. R. Co. approved March 4, 1881, provides that when a question of right arises and the company cannot agree with the owner of the land the works of the company shall proceed as though there was no disagreement. The Sheriff at the request of either party shall summon a jury, who shall assess the damages to be paid by the company, after being sworn, &c., which assessment shall be final, unless an appeal shall be entered in the Circuit Court. This is the substance of the provision. Measured by the rule announced by the court in Moody and Wife vs. The J. T. & K. W. R. R. Co., 20 Fla., 597, the act mentioned so far as it seeks to subject land under the power of eminent domain is ineffectual and void. It provides no means of enforcing payment for land taken or damages in consequence of the taking and destruction of private property. The invalidity of the section is conceded by defendant, who yet insists that the complainant has no remedy in equity, but only an action at law for the injury. Had the complainant, who was present at the time the property was taken, at once taken proper steps to arrest the act of the company in taking possession of and building the road over it, as was done in the Moody case, he might have had his injunction. But this complaint does not allege that he took any steps whatever, not even by a mere objection, to prevent the defendants construct-

ing their road across his property. He was notified that a jury would assess his damages, and he appeared before them, making no objection to the proceeding, and endeavored to show how and to what extent he would be injured. The jury may have acted unfairly and arbitrarily refused him a lawful right, yet he did not object, but sat down in his tent and witnessed the occupation of the company in expending their money, erecting their railroad structures, laying their tracks, and running their daily trains over them for over nine months before commencing this suit. The only thing now complained of is that the company has not offered him enough money to compensate him for the loss of his property.

Redfield, C. J., an authority upon railroad law, in delivering the opinion of the court in McAuley vs. W. Vt. R. R. Co., 33 Vermont, 311, 321, says: In these great public works the shortest period of clear acquiescence, so as fairly to lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form as to stop the company in the progress of their works, and especially to stop the running of the road after it has been put in operation, whereby the public acquire important interests in its continuance. The party does not, of course, lose his claim or the right to enforce it in all proper modes. He may possibly have some rights analogous to the vendor's lien in England, and here until the Legislature cut it off. But it is certain, according to the English decisions, that he cannot stop the works, and especially the trains upon the road, if he has, in any sense, for the shortest period, clearly given the company, either by express assent or by his silence, to understand that he did not intend to object to their proceeding with their construction and operation.

This doctrine is fully sustained in Hentz vs. Long, I. R. Co., 13 Barb., 646, 655; Bassett vs. Salisbury Manf. Co., 47 N. H., 426; Goodin vs. Cin. & W. Canal Co., 18 Ohio St. 169; Eaton & McMahon vs. N. Y. & L. B. R. R. Co., 24 N. J. Eq., 49; Picket vs. Ridgefield Park R. R. Co., 25 Ib., 316, 323, (cited 3 Myl. & Cr., 784; 33 Beav., 290; 4 Railroad and Canal cases, 69;) Attorney-General and Del. & B. B. R. R. Co., 27 N. J. Eq,, 124; Meredith vs. Sayre, 32 N. J. Eq., 557; Provolt vs. Chicago & R. I. & Pac. R. R. Co., 57 Mo., 256; Pettibone vs. LaC. & M. R. R. Co., 14 Wis., 443, 447; Sheldon vs. Rockwell, 9 Wis., 180; Carson vs. Coleman, 3 Stockton, 106; Pierce on Railroads, 169, 170, and notes; and it does not alter the case that complainant at the time when the lot was taken supposed the R. R. Co. were entitled to enter and take the land under the statute. Greenhalgh vs. The Manchester & Bir. R. R. Co., 3 Myl. Cr., 784.

As we understand the facts from the bill the complainant is not entitled to an injunction to stop the running of the defendants' cars over his lot, after having acquiesced in the construction of the road by delaying to proceed against it until it had completed the structure with full knowledge of all the facts.

The taking possession and building the track by defendant, does not divest the complainant of his title to the land. He has a right of action against the company in appropriate form. Pierce on Railroads, 229, 230. But he has waived his right to enjoin use of the railroad in view of the public interests involved.

There is no ground for invoking the aid of a court of equity in a case of this character. In regard to private trespasses, the interference of courts of equity by way of injunction is founded upon the ground of restraining irrep-

arable mischief, or preventing multiplicity of suits or suppressing interminable litigation.    2 Story's Eq. Jur., §925.

But where the injury is of a permanent nature, such as the flooding of land or the laying of a railroad, the damages recoverable at law will include the entire injury and in that case there is no danger of further litigation for injuries arising from the same cause.  Pierce on Railroads, §230, and note 4.

The decree overruling the demurrer must be reversed.