## CARTER v. SOUTHERN RAILWAY COMPANY.

A person who having in charge as agent the goods of another makes with a common carrier a contract to ship such goods, in which the agency is not disclosed, may maintain an action in his own name for a breach of such contract.

Argued May 22, — Decided June 5, 1900.

Action for damages—appeal. Before Judge Smith. Telfair superior court. October term, 1899.

*E. D. Graham*, for plaintiff. *DeLacy & Bishop*, for defendant.

Cobb, J. Carter sued the railroad company for damages resulting from the breach of a contract of shipment which the defendant had entered into with the plaintiff. On the trial

the plaintiff introduced in evidence a receipt signed by an agent
of the defendant, of which the following is a copy: "Received
from W. R. Carter the following articles in apparent good or-
der, contents and value unknown, as per coupon attached, to
be transported to W. R. Carter, McRae, Ga.," setting forth the
articles shipped.    The plaintiff testified that the distance from
the point from which the goods were shipped to their destina-
tion was thirty miles; that they should have been delivered in
twenty-four hours, which was a reasonable time; that the goods
were new and in good condition when delivered to the defend-
ant; that they were not delivered by it at the point to which
they were shipped until twenty-five days had elapsed from the
time they were delivered to the defendant; and that when deliv-
ered some of the goods were in such a damaged condition that
they were rendered worthless, and all of them were more or
less damaged.    Just before leaving the witness-stand the plain-
tiff stated: "The goods belonged to my wife Mary Carter. She
owned them, and I had the goods in my charge as her agent."
There being no further evidence for the plaintiff, the court,
upon motion of defendant's counsel, granted a nonsuit on the
ground that the goods alleged to have been damaged did not
belong to the plaintiff but to his wife.    To this judgment the
plaintiff excepted.    The question, therefore, presented for de-
cision is whether or not the plaintiff could maintain the action
in his own name.    It is an elementary principle that an action
on a contract must be brought in the name of the party in
whom the legal interest is vested; and that the legal interest
in a contract is in the person to whom the promise is made and
from whom the consideration passes.    15 Enc. P. & P. 499,
500; Civil Code, § 4939.    In the present case the plaintiff, al-
though in reality he occupied the relation of agent of his wife
to take charge of the goods shipped, was named both as the
consignor and consignee in the contract of shipment, with
no reference whatever therein to the fact of his agency.    Under
such circumstances the action could be maintained in his own
name.    Generally, it is true, an agent has no right of action
upon a contract made by him in behalf of his principal, but he
has a right of action in his own name "where the contract is
made with the agent in his individual name, though his agency

be known." Civil Code, § 3037 (3). Certainly the action could be maintained where the fact of agency and the name of the principal are both concealed by the agent. In such a case the agent is, in contemplation of law, the real contracting party, to whom the promise of the other party was made and who is entitled to enforce it. Mechem, Ag. § 755; Story, Ag. (9th ed.) § 393.

But the plaintiff was the consignor of the goods shipped. The contract was made with him, and he is primarily liable for the transportation charges. The carrier dealt with him as the owner of the goods, and could not, in an action by the plaintiff to recover the goods, dispute his title, unless the title of the real owner was sought to be enforced against the carrier. Civil Code, § 2286. In the case of *Haas* v. *Railroad Company*, 81 *Ga.* 792, suit was brought by Haas upon a contract or bill of lading made by the defendant with one Ayres. It was held that "the bill of lading for the flour not having been indorsed to plaintiff by the party in whose favor it was issued, the former could not maintain an action against the company upon it." It appears from the record in that case that Ayres was the consignor and Haas the consignee. The present Chief Justice says in the opinion : "The record does not show that this bill of lading was assigned or indorsed by Ayres to Haas. This being true, Haas, under our code, could not bring suit on the contract made between the railroad company and Ayres." The courts of both this country and England are now, with a few exceptions, all agreed that where the consignor makes the contract of shipment with the carrier, he may bring an action for loss of or injury to the consignment, although he may not be the actual owner of the property. In such a case the privity of contract between the carrier and the consignor is a sufficient foundation on which to base the action. It is also well settled by the authorities that where a consignor, who is himself not the real owner, recovers damages from the carrier for a breach of the contract of carriage, the recovery enures to the benefit of the owner, and the consignor is regarded simply as the trustee of an express trust. It would seem to follow necessarily from this, that a recovery by the consignor for a breach of the contract would be a bar to an action by the owner in tort for the injury done him. The English courts have, so far as we are aware, uniformly adhered

to the rule, that an action for a breach of a contract of carriage made with the consignor may be maintained by him. In Davis v. James, 5 Burr. 2680, a decision rendered in 1770, it was held that "Action lies against carrier in name of consignor, who agreed with him and was to pay him." The question was squarely made in that case, and the court reached the conclusion above indicated. Lord Mansfield said, in the opinion which he rendered in that case: "This is an action upon the agreement between the plaintiffs and the carrier. The plaintiffs were to pay him. Therefore the action is properly brought by the persons who agreed with him and were to pay him." This decision, as above stated, was uniformly adhered to by the English courts, and there being in this State no statute law to conflict with the rule therein announced, it became, by force of our adopting statute, the law of this State.

In Moore v. Wilson, 1 Term Rep. 659, the doctrine announced in the case just referred to was reaffirmed; and the court held further that it was immaterial whether the hire was to be paid by the consignor or the consignee, as the former was, in law, liable to the carrier for the hire. In Joseph v. Knox, 3 Camp. 320, it was held that an action by the consignor would lie. The opinion was rendered by Lord Ellenborough, who said: "I am of opinion that this action well lies. There is a privity of contract established between these parties by means of the bill of lading. That states that the goods were shipped by the plaintiffs, and that the freight for them was paid by the plaintiffs in London. To the plaintiffs, therefore, from whom the consideration moves, and to whom the promise is made, the defendant is liable for the non-delivery of the goods. After such a bill of lading has been signed by his agent, he can not say to the shipper they have no interest in the goods, and are not damnified by his breach of contract. I think the plaintiffs are entitled to recover the value of the goods, and they will hold the sum recovered as trustees for the real owner." In Dunlop v. Lambert, 6 Cl. & F. *600, the House of Lords held: "Though, generally speaking, where there is a delivery to a carrier to deliver to a consignee, the latter is the proper person to bring the action against the carrier, yet if the consignor make a special contract with the carrier, such contract super-

sedes the necessity of showing the ownership in the goods, and the consignor may maintain the action, though the goods may be the property of the consignee." The "special contract" referred to in the above quotation was simply a bill of lading declaring that the goods were to be delivered to Matthew Robson, "freight for the said goods being paid by William Dunlop & Co.," the plaintiffs. The case of Dawes *v.* Peck, 8 Term Rep. 330, is sometimes cited as authority for a contrary rule. That case is thus commented upon and distinguished by Judge Turley in the case of Carter *v.* Graves, 9 Yerger, 445, 450 : In that case "an action on the case was brought by a consignor against a common carrier for not safely carrying according to his undertaking, in consideration of a certain hire and reward to be therefor paid, two casks of gin from London to one Thomas Ady, at Hillmorton, in Warwickshire. The court determined that, if a consignor of goods deliver them to a particular carrier by the order of a consignee, and they be afterwards lost, the consignor can not maintain an action against the carrier, and that the action can only be maintained by the consignee. In this case there is no contract with the consignor by the carrier for the delivery of the articles ; the freight is not paid by him ; the property is delivered to a carrier specified by the consignee ; and, more than all, the court, in the opinions delivered, refer to the cases of Davis and Jordan, 5 Burr. 2680, and Moore and others *v.* Wilson, 1 Term Rep. 659, and recognize them as sound authority."

A leading American case is Blanchard *v.* Page, 8 Gray, 281, where, after an elaborate review of the authorities, Chief Justice Shaw reached the conclusion that "the shipper named in a bill of lading may sue the carrier for an injury to the goods, although he has no property, general or special, therein." The reasoning upon which this ruling is based seems to be unanswerable, and the decision ought to be accepted as decisive of this question. It must not be lost sight of that the present action was based upon a contract. If the action had been based upon the tort of the carrier in delivering the goods in a damaged condition, then a question entirely different from that involved in the present case would be raised. In such a case it would seem that the right of action is to recover for the injury

in the interest or right in the property, and the shipper, if not the owner, could not bring such an action. The distinction between such a case and one like the present was pointed out in Finn v. Railroad Company, 112 Mass. 524, where it was ruled, in effect, that in order to authorize an action by the consignor, who is not the owner of the goods, there need be no express contract between him and the carrier, but that the action may be maintained upon the contract implied from the delivery and receipt of the goods for carriage, if no action ex delicto has been begun by the consignee; and that the consignor will hold the sum recovered in trust for the consignee. In Carter v. Graves, 9 Yerg. 445, it was held: "A consignor can not maintain an action on the case for the loss or injury of the property consigned, without showing that he has a general or special right thereto, but he may in all cases maintain an action of assumpsit upon a contract to deliver the property safely, he having made the same, and paid, or become bound for, the consideration." In Hooper v. Railway Company, 27 Wis. 81, 91, it was said: "The shipper is a party in interest to the contract, and it does not lie with the carrier, who made the contract with him, to say, upon a breach of it, that he is not entitled to recover the damages, unless it be shown that the consignee objects; for, without that, it will be presumed that the action was commenced and is prosecuted with the knowledge and consent of the consignee, and for his benefit. The consignor or shipper is, by operation of the rule, regarded as a trustee of an express trust, like a factor or other mercantile agent who contracts in his own name on behalf of his principal." Another well-considered case, in which an elaborate review of the authorities is made, is Southern Express Company v. Craft, 49 Miss. 480. In Great Western Railroad Company v. McComas, 33 Ill. 185, it was ruled: "Where goods are shipped upon a railroad for transportation, the consignor may sue for their non-delivery, though he be but a bailee. He has such a special property in the goods as to give him a right of action. So may the real owner sue, and so may the consignee." It was ruled further in that case that whichever of these three first obtains damages, it will be in full satisfaction of the claims of the others.

We have not undertaken to collate here all of the cases bearing upon this question. Many of them, perhaps nearly all, are cited in the decisions above referred to. The following also support the ruling made in the present case: Cobb v. Railroad Company, 38 Iowa, 601 (8); Dows v. Cobb, 12 Barb. 310; Harvey v. Railroad Company, 74 Mo. 539; Atchison v. Railway Company, 80 Mo. 213; Moore v. Sheridine, 11 Harr. & McH. 453; Southern Express Co. v. Caperton, 44 Ala. 101; Mo. Pac. Rwy. Co. v. Smith, 84 Tex. 348; Mo. Pac. Rwy. Co. v. Scott, 4 Tex. Civ. App. 76; Ohio & Miss. Railroad Co. v. Emrich, 24 Ill. App. 245; Northern Line Packet Co. v. Shearer, 61 Ill. 263; Brill v. Railway Co., 20 U. C. C. P. 440; Moran v. Packet Co., 35 Me. 55; Cantrell v. Pacific Express Co., 58 Ark. 487; Goodwyn v. Douglas, Cheeves (S. C.), 174; 3 Enc. P. & P. 826; Hutchinson, Car. § 724 et seq.; Parks v. Railway Co., (Tex.) 30 S. W. 708; Galveston Ry. Co. v. Barnett, (Tex.) 26 S. W. 782: Davis v. Jacksonville South-Eastern Line, (Mo.) 28 S. W. 965. There are a few cases which seem to hold that the sole right of action against a carrier for loss of or injury to goods is in the consignee, notwithstanding a contract of carriage was made with the consignor. It would not be profitable to attempt to reconcile these decisions. Some of them, however, will be found upon examination to refer to actions ex delicto brought by the consignee as the real owner of the goods. Those which do hold that the consignor can not maintain an action for a breach of a contract made by the carrier with him are, as has been seen above, against both principle and the great weight of authority, and ought to be disregarded. So far, however, as the present case is concerned, the plaintiff was both consignor and consignee, and the real owner was a party entirely unknown in the transaction. We prefer, however, to place our decision upon the ground that as the plaintiff was the agent of the real owner of the goods and had charge of the same, he was authorized to enter into a contract of shipment with the carrier; and that having entered into this contract, the legal interest therein was vested in him, and he could sue for its breach. The decision of this court in *Lockhart* v. *Railroad Co.*, 73 *Ga.* 472, does not conflict with anything ruled in the pres-

ent case. The plaintiff in that case had no contract with the carrier, and no interest whatever in the property.

It was contended by counsel for defendant in error that the plaintiff in the present action failed to make out a prima facie case of liability on the part of the defendant for injury to the goods, and that, this being so, even if the court erred in placing his decision granting a nonsuit on the ground indicated in the order, the judgment should be affirmed, as the right result was reached, though the wrong reason may have been given for it. We think the plaintiff did make out a prima facie case of liability; and consequently the judgment of nonsuit was in any view of the case erroneous, and a trial upon the merits should be had.

*Judgment reversed. All concurring, except Fish, J., absent.*